## Reading Rail-road Co. *against* Johnson.

A nominal plaintiff on the record, who, before suit brought, transferred his claim to a third person, is not thereby made competent to testify as a witness, on the trial of the cause, on behalf of the plaintiff.

"We owe P. S. the sum of $3454.22, it being for powder furnished us by the said P. S.; you will please accept the above and oblige yours," directed to W. R., who was at the time engineer of a rail-road company, has no tendency to support an action of *assumpsit* against the company to recover the amount mentioned in it, and should not be received in evidence.

The authority of an agent to assume the payment of the debt of a third person for his principal should be clearly proved, or no recovery can be had upon such promise against the principal.

A release of all actions and causes of action against J. S. is not a release of a cause of action against a firm of which J. S. is a member,

To receive evidence of the contents of a written paper in the possession of the opposite party, without previous notice to produce it, is illegal; but the illegality is cured by subsequent proof by the objecting party that no such paper ever existed.

A mere promise to pay the debt of another without consideration is not obligatory, and there can be no recovery upon it.

ERROR to the Common Pleas of *Berks* county.

Peter Smith, for the use of Jacob Johnson, against The Philadelphia and Reading Rail-road Co. This was an action on the case in *assumpsit*, in which the plaintiff declared as follows:

" The Philadelphia and Reading Rail-road Co. were attached to answer unto Peter Smith, to the use of Jacob Johnson, of a plea of trespass upon the case, &c., and whereupon the said Peter Smith to the use of Jacob Johnson, by Elijah Dechert his attorney, complains that whereas John M'Ilvain and Joseph Smith, doing business under the firm of M'Ilvain & Smith, had a contract on the Philadelphia and Reading Rail-road for the construction of a part of said road, and they became indebted to a certain Peter Smith in the sum of $4000 for produce, which he furnished to and for them from time to time while they were prosecuting their work for the said Company, to wit, on or about the 10th day of June, A. D. 1840, at the county of Berks aforesaid, and in consequence of the said work done and performed by the said M'Ilvain & Smith for the said Philadelphia and Reading Rail-road Co.,

they became justly indebted to the said M'Ilvain & Smith in the sum of $4000, to wit, on the same day and year aforesaid, at the county of Berks aforesaid; and the said Peter Smith wished to secure the payment of the said $4000 due to him as aforesaid from the said M'Ilvain & Smith, and in order to do so he called upon the said Philadelphia and Reading Rail-road Co. and represented to them his claims against the said M'Ilvain & Smith; and the said Philadelphia and Reading Rail-road Co. then and there, to wit, on the 22d day of July, A. D. 1840, at the county of Berks aforesaid, admitted that the said M'Ilvain & Smith were entitled in their hands, for work, labour and services performed as aforesaid, to the sum of about $3000 lawful money, and the said Philadelphia and Reading Rail-road Co. then and there agreed with the said Peter Smith that if he called upon the said John M'Ilvain and Joseph Smith, doing business under the firm of M'Ilvain & Smith, and it was agreed between them and the said Peter Smith that the said Peter Smith should receive the said sum of $3000, or whatever the balance might be on a full settlement, in the hands of the said Philadelphia and Reading Rail-road Co., then they, the said Philadelphia and Reading Rail-road Co., in consideration that they were indebted to the said M'Ilvain & Smith as aforesaid, would pay to the said Peter Smith the said balance which might be found due in their hands to the said M'Ilvain & Smith as aforesaid, amounting to $3000 and upwards, to wit, at the county of Berks aforesaid. And the said Peter Smith to the use of Jacob Johnson avers that he did call upon the said M'Ilvain & Smith, to wit, on the 22d day of July in the year last aforesaid, at the county aforesaid, and they then and there agreed that in consideration that the said Peter had delivered to them large quantities of powder before that time, to the amount of about $4000, while they were prosecuting their work for the said Company as aforesaid, he the said Peter Smith should be and was authorized by them to call upon and demand and receive all the money which was still due and owing and coming to them, the said M'Ilvain & Smith, from the said Philadelphia and Reading Rail-road Co. as aforesaid; of all which said several premises, the said Philadelphia and Reading Rail-road Co., to wit, on the day and year last aforesaid, at the county of Berks aforesaid, had notice. By means whereof the said Philadelphia and Reading Rail-road Co. then and there became liable to pay to the said Peter Smith, to the use of Jacob Johnson, the sum of $3000 and upwards, to wit, the balance in their hands which before that time was due and payable to the said M'Ilvain & Smith, when they the said defendants should be thereunto afterwards requested; and being so liable, they the said Philadelphia and Reading Rail-road Co. in consideration thereof, afterwards, to wit, on the same day and year last aforesaid, at the county aforesaid, undertook and then and there faithfully promised the said Peter Smith, to

the use of Jacob Johnson, to pay him the said sum of $3000 and upwards, to wit, the said balance due to the said M'Ilvain & Smith on a full settlement with them, when they the said Philadelphia and Reading Rail-road Co. should be thereunto afterwards requested. Nevertheless, &c."

To which the defendant pleaded *non assumpsit.*

The plaintiff offered Matthias Mengel as a witness to prove the promise of the defendants, as laid in the declaration, made by Wirt Robinson, Esq., their engineer and agent, to which the defendants objected until the authority of Wirt Robinson, Esq. was first proved; but the court overruled the objection and sealed a bill of exception.

Matthias Mengel sworn.—In 1840, on July 22d, I think that was the day, Peter Smith called at my office, and stated that M'Ilvain & Smith were to come up on that day. I went to the engineer's office with him; I asked a man if Mr Robinson was in the office. He said, I am Mr Robinson. I stated to him that Mr Smith had alleged to me that M'Ilvain & Smith were to come up that day.

It was one of the firm of M'Ilvain and Smith, and Mr Smith was afraid he would lose his money, as those men intended to cheat him out of his money, as they did not come up. I told him this was for powder furnished for Flat Rock tunnel. I asked in words to the effect if it could not be fixed so that Smith could get that money. Mr Robinson expressed sorrow that Smith had not got his money. He stated they had paid large amounts to M'Ilvain & Smith. Peter Smith said those men had told him they had something like $7000 coming from the Company. Mr Robinson said there wasn't so much money, and also said the Company were not in the habit of accepting orders, for if they did all the contractors would draw. He then stated if Mr Smith would go to them, and get a statement and request from them, he would retain the money, and after the next estimate day he would pay him the money. He stated the Company owed these men about $3000, and said it might amount to more. There was a good bit of conversation. We remained some time. I went to my office and drew what I supposed to be a statement and request. (This is the paper I drew.) Peter Smith had a copy of his account against M'Ilvain & Smith. I am not acquainted with the handwriting of M'Ilvain & Smith. This paper was taken away on the 22d of July. I received it again by mail, between the 17th and 20th of August. When I handed it to Peter Smith on the 22d of July, the signature was not on it. When I received it back, the signature was on it. I saw Mr Robinson, I think, on the 22d of August, in the engineer's office. That was the estimate day. I presented that paper to him. He said he did not wish to accept the statement and request. I then stated the understanding before. I told him that was the understanding between us,

[Reading Rail-road Co. v. Johnson.]

between Mr Robinson and Peter Smith, when we saw him. He then took it, and had it something like two weeks. I called several times afterwards, before I saw him again. At one time he wanted me to lay an attachment on the money in the Company's hands. I told him I could not lay an attachment on the money, as M'Ilvain & Smith were in the State. This was near two weeks after he had the paper. He said they would have no objection to paying the money to Peter Smith if they were safe in so doing. The day I took back the statement and request to Mr Robinson, he showed me a letter from M'Ilvain & Smith, telling him not to pay the money over. When I took back the statement and request, I told Mr Robinson not to pay the money to M'Ilvain & Smith; Peter Smith would look to them; suit would be brought. He said they would not pay the money over.

At that time I did not know who was the agent of the Company for making contracts.

*Cross-examined.*—I am not certain that Mr Robinson looked at the books when he told me there was about $3000 due to M'Ilvain & Smith.

The plaintiff, farther to maintain the issue on his part, called Peter Smith, to the admission of whom as a witness the defendants objected; whereupon the plaintiff again called Matthias Mengel, who testified as follows:

"When Peter Smith assigned his claim to Jacob Johnson, a note was given for the consideration for $2500, payable in one year. The understanding was, Johnson was to take the risk. I saw Johnson give his note. Peter Smith took it away. I have heard Johnson say he was a son-in-law of Peter Smith's. I heard Mr Johnson say he had paid some money on the note; this was since the arbitration. I heard him say so since he has been in town this time. In the first place Peter Smith put the claim into my hands to collect. He was with me when I told Mr Robinson."

The plaintiff then gave in evidence the following paper, executed before suit brought:

"Whereas Peter Smith, of Frederick township, Montgomery county and State of Pennsylvania, has from time to time delivered powder to J. M'Ilvain and J. Smith, now or lately contractors on the Philadelphia and Reading Rail-road, to the amount of $3454.22, as appears by the admission in writing of the said M'Ilvain & Smith; and whereas the said Philadelphia and Reading Rail-road Co. by their agent, Wirt Robinson, agreed to pay the said sum of money to the said Peter Smith, and they are liable to pay said sum of money to the said Peter Smith; and whereas the said Peter Smith has agreed to sell the said claim to Jacob Johnson, of the said county of Montgomery, at the risk of the said Jacob Johnson, and without any recourse to the said Peter Smith: Therefore, know all men by these presents, that I, Peter Smith as aforesaid, for and in consideration of the sum of $2500 lawful money to me

[Reading Rail-road Co. v. Johnson.]

in hand paid by the said Jacob Johnson, Jun., at and before the ensealing hereof, the receipt whereof, is hereby acknowledged, have assigned, transferred and set over, and by these presents do assign, transfer and set over unto the said Jacob Johnson, Jun., his executors, administrators and assigns, the said sum of $3454. 22, and all other sum or sums of money which is or are due to the said Peter Smith as aforesaid, and now in the possession of the said Philadelphia and Reading Rail-road Co., or in whose hands or possession the same may be; and I do hereby assign, transfer and set over to the said Jacob Johnson, Jun. all my right, title, claim, interest and demand in and to the same; and I do hereby give and grant unto the said Jacob Johnson, Jun. my full power and authority to demand, sue for, recover and receive the same to his own use, and upon the receipt thereof to give a sufficient discharge for the same, or any part thereof. But it is fully understood and agreed between the said Peter Smith and the said Jacob Johnson, Jun., that the said Jacob Johnson, Jun. takes this assignment and transfer at his own risk, and that the said Peter Smith does not in any manner become responsible for the same or any part thereof, in case the said money is not recovered from the said M'Ilvain & Smith, or from the said Philadelphia and Reading Rail-road Co.

Witness my hand and seal, this 22d day of September, A. D. 1840.

PETER SMITH, [L. S.]"

The plaintiff then again offered Peter Smith as a witness, to the admission of whom the defendants objected; but the court overruled the objection and admitted him to testify.

Peter Smith was then sworn on his *voir dire*, and testified as follows :

" I live in Sumneytown; Jacob Johnson lives near Sumneytown. He is my son-in-law. We do not live together. I oversigned the note to one of my sons a good while ago, about a year. The note is not yet paid. The consideration of the assignment was to collect the money and pay my debts. I have received $100 on the note."

Whereupon the defendants renewed their objection to Peter Smith as a witness, but the court overruled the objection and permitted him to testify; to which decision the defendant excepted.

The evidence of this witness was in substance the same as that given by Matthias Mengel.

The plaintiff then offered in evidence the paper referred to by the witness, which was this:

" Mr WIRT ROBINSON :

Sir—We owe Peter Smith the sum of $3454.22, it being for powder furnished us by the said Peter Smith. You will please accept the above, and oblige yours,

M'ILVAIN & SMITH."

VII. — 41

To which the defendant objected; but the court overruled the objection and sealed a bill of exception.

The plaintiff then called several witnesses, who proved that Wirt Robinson was the engineer and agent of the Company, and paid its debts and liabilities by drafts on the treasurer.

The plaintiff then offered John R. M'Ilvain, one of the firm of M'Ilvain & Smith, as a witness, after having given in evidence the following release:

"Know all men by these presents, that I, Jacob Johnson, of Montgomery county, State of Pennsylvania, as well for and in consideration of the sum of $1 to me in hand paid by John R. M'Ilvain, of Philadelphia, State aforesaid, at the ensealing and delivery hereof, the receipt whereof I do hereby acknowledge, as for divers good causes and valuable consideration, as thereunto specially showing, have remised, released, quit-claimed and for ever discharged, and by these presents, for me, my heirs, executors and administrators, do remise, release, quit-claim and for ever discharge the said John R. M'Ilvain, his heirs, executors and administrators, and every of them, of and from all manner of action and actions, cause and causes of action and actions, suits, debts, dues, sum and sums of money, account, reckonings, bonds, bills, specialties, covenants, contracts, agreements, promises, variances, damages, judgments, extents, executions, claims and demands whatever in law or equity, or otherwise howsoever, which against the said John R. M'Ilvain I ever had, now have, or which I or my heirs, executors or administrators hereafter can, shall or may have, for or upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the day of the date of these presents.

In witness whereof, I have hereunto set my hand and seal, this 15th day of August, A. D. 1843.

                              JACOB JOHNSON, JUN. [L. S.]"

The defendant objected to him on the ground of interest; but the court overruled the objection and sealed a bill of exception.

The defendants then gave in evidence the contract between M'Ilvain & Smith and the Company, and their final estimate up to the 20th July 1840; and then Wirt Robinson, Esq. was examined as witness, and testified that he never had made any promise for the Company, or accepted any order for the payment of money to the plaintiff, but on the contrary refused to accept the same; that there was no money due by the Company on the 22d July 1840, the time when the *assumpsit* was alleged to be made, as appeared by the final estimate.

M'Ilvain was called again by the plaintiff, and testified that when he had finished his contract in July 1840, Wirt Robinson, Esq. exhibited to him a final estimate of the work. The plaintiff then offered to prove by the witness the contents of that estimate,

to which the defendant objected; but the court overruled the objection and sealed a bill of exception. The witness then testified that the final estimate, as shown to him by the chief engineer, Wirt Robinson, Esq., exhibited a balance due to M'Ilvain & Smith of upwards of $3300.

The defendants proved by Mr Robinson that there never was any such final estimate in existence.

The defendants then requested the court to charge the jury as follows:

1. That there is no evidence in the case of any authority in Wirt Robinson to accept drafts drawn upon the Company, or to make such a contract as that alleged in the plaintiff's declaration.

2. That if the alleged contract has been proved, the condition upon which the promise to pay was founded has not been complied with by the plaintiff.

3. That the paper dated August 15, 1840, is not an order upon the Company to pay the money due to M'Ilvain & Smith, or any part thereof, to Peter Smith.

4. That obtaining and presenting that paper was not a compliance with the condition in the alleged contract, and therefore the plaintiff cannot recover.

5. That as the paper is addressed to Wirt Robinson, it gave the defendants no authority to pay the debt due to M'Ilvain & Smith, if any, to Peter Smith; and, had the money been paid, it would have been no defence to a suit brought by M'Ilvain & Smith for the recovery of the same debt.

6. That if the jury believe there was nothing due from the defendants to M'Ilvain & Smith on the 22d of July 1840, the plaintiff cannot recover.

7. That by the contract between the defendants and M'Ilvain & Smith, Wirt Robinson, the chief engineer, is the exclusive judge of the amount due, if any, to said firm, in the absence of any evidence of his having designated any other person.

8. That the testimony of Wirt Robinson is conclusive that there was nothing due by the defendants to M'Ilvain & Smith, and therefore the plaintiff cannot recover.

9. That Peter Smith cannot maintain this action in his own name.

10. The alleged consideration does not proceed from the plaintiff; therefore he cannot recover.

The court thus answered these points:

1. If the Company did owe the firm the amount of money claimed, or any part of it, Mr Robinson might for a valuable consideration bind the Company to pay it, or the amount due, to the assignee of the firm. Whether he did so bind the Company by contract, is a fact for you to decide from all the evidence.

2. What the contract was, if any, and its conditions, and how far complied with, are facts for you to decide. It is neces-

sary that the plaintiff should have complied with the conditions to be performed by him. If he has not, he cannot recover.

3. The paper referred to is not, in words, an order on the Company; it is on Wirt Robinson, their paying agent. A payment on it of any money due would have been a good payment by the Company against the drawers of the order.

4. This paper having been obtained and presented, would be in substance a compliance with the contract as alleged, unless objected to when presented on account of that want of form that has been urged against it on the trial.

5. We answer, that this point is not correct in point of law.

6. This point is correct, and the court assents to it.

7. This point is also correct.

8. If the testimony of Mr Robinson is believed to be true, it would be conclusive evidence against the plaintiff, and would entitle the defendants to a verdict. But you are to take all the evidence; you are to determine on the credit that is due to the witnesses. You will reconcile conflicting testimony if you can; if you cannot reconcile it, you will decide which is to be believed. In this way you will determine all the facts.

9. If there is nothing more proved than a mere promise to pay an admitted balance, the plaintiff cannot sustain this suit; to entitle him to recover, you must be satisfied from the evidence that there was a new and distinct contract made, founded on some valuable consideration performed, or to be performed.

10. What the consideration was, and from whom it was to proceed, are facts for you to determine. If a valuable consideration did exist and was performed, it was not necessary that it should proceed from the plaintiff, unless the contract made it so.

To this charge the defendants' counsel excepted.

*Strong* and *Meredith*, for plaintiff in error.
*Smith* and *Darling*, for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—There is nothing in the 1st bill of exception. It amounts at most only to an objection to the order in which the plaintiff below was proceeding to give evidence in support of his claim; for if he failed, after proving by Mengel that Robinson had made a contract on behalf of the plaintiffs in error to pay the money claimed in this action to Peter Smith, the plaintiff below, to show that Robinson had authority from them to make such contract, the evidence of Mengel could not avail the defendant in error, nor prejudice the plaintiffs in error; and the court would have been bound so to have directed the jury.

The 2d and 3d bills of exception, however, are very material, and raise the question, was Peter Smith, the nominal plaintiff, at least on record, a competent witness to establish or to support the

[Reading Rail-road Co. v. Johnson.]

action? On the very eve of commencing this action, the 22d of September 1840, the writ being sued out in the course of a day or two following, Peter Smith made an assignment of his claim against the plaintiffs in error to his son-in-law, Jacob Johnson, for whose use this action is brought, who gave him his note for the amount, which Peter Smith assigned to one of his sons, and still remains unpaid. It is impossible to avoid coming to the conclusion that the assignment by Smith to Johnson was made for the special purpose of rendering Smith a competent witness to support the claim and insure the recovery of it. This, of itself, according to the decision of this court in *Patterson's Executors* v. *Reed*, is sufficient to prevent Smith's being made a competent witness, by the assignment, to support the claim. But it appears that he is incompetent upon another ground, which is, that he has made himself liable to Johnson, notwithstanding the guarded manner in which the assignment is drawn, to repay whatever he has or may recover from Johnson in consideration of the assignment, if Johnson shall fail to recover from the plaintiffs in error by reason of their never having become or rendered themselves liable to pay Peter Smith. The assignment, though it provides that "It is fully understood and agreed between the said Peter Smith and the said Jacob Johnson, Jun., that the said Johnson, Jun. takes the assignment and transfer at his own risk, and that the said Peter Smith does not in any manner become responsible for the same, or any part thereof, in case the said money is not recovered from said M'Ilvain & Smith, or from the said Philadelphia and Reading Rail-road Co.," yet this provision will not protect Peter Smith from liability to make good to Johnson any loss which he shall sustain, if a recovery against the plaintiffs in error be defeated on the ground that they never promised or became liable to pay the claim assigned. If, however, Johnson should fail to recover it merely on account of their inability to pay, then Peter Smith, by means of the clause recited, would be protected from all liability to Johnson on that account. But, having induced Johnson to believe by his statement, as it must be taken, that the plaintiffs in error had promised and become liable to pay the claim, and therefore to accept of the assignment of it, and to give his note for the amount, when in fact the plaintiffs in error never had made themselves liable in any way whatever to pay it, he will not be allowed, under that or any other stipulation contained in the assignment, to protect himself from any falsity or fraud practised for the purpose of inducing Johnson to take the assignment and give his note for the amount of the claim assigned. Smith has stated in his assignment to Johnson that the plaintiffs in error had promised to pay and were liable to pay it, which statement could only have been made with a view, or at least was calculated to induce Johnson to accept of the assignment on the terms proposed; and to hold, by the tenor of the assignment, that

VII. — 2 c

Smith was not to be liable to Johnson for the falsity of such state‑ ment, if it be false, would be giving to the assignment a construc‑ tion that would protect Smith in having committted a gross fraud by means of a wilful falsehood, which cannot be tolerated or sanc‑ tioned.    To do so, would be contrary to good morals as well as sound policy.

The 4th bill of exception was to the admission of a paper, signed by M'Ilvain & Smith, drawn in the following terms, to wit:

" Mr WIRT ROBINSON:

" Sir—We owe Peter Smith the sum of $3454.22, it being for powder furnished us by the said Peter Smith.    You will please accept the above, and oblige yours,

M'ILVAIN & SMITH.

Flat Rock Tunnel, August 15, 1840."

This paper was not admissible as evidence tending in any de‑ gree to show that the plaintiffs in error had made themselves liable to Peter Smith to pay him moneys owing to him by M'Ilvain & Smith, and consequently not pertinent to the issue trying.    It cannot be considered as a bill of exchange or order drawn on the plaintiffs in error by M'Ilvain & Smith.    It is not only wanting in terms to give it that import, but it is not drawn upon or ad‑ dressed to them or their agent, but to " Mr Wirt Robinson" in his individual character.    But had it been drawn in proper form and addressed to Mr Robinson as the agent of the plaintiffs in error, it was not shown by any evidence whatever that he had been invested by them to accept bills or orders drawn upon them, so as to create new liabilities: on the contrary, so far as any evi‑ dence was given relating to the matter, it tended to prove that the plaintiffs in error were opposed to the acceptance of orders, or anything of the sort, drawn upon them by their contractors. Hence the acceptance of it would not have been binding on them, so as to render it admissible evidence for that purpose.    No doubt it was wise in the plaintiffs in error not to give such authority; otherwise, if unable to pay at any time when called on, they might, by reason thereof, have been subjected to the expenses and costs of fifty or more suits, instead of one, upon the acceptance of as many orders drawn in favour of different persons by the same contractor.    An authority, therefore, which might happen to be attended with such injurious consequences to those granting it, ought to be shown clearly to have been given, and not inferred from doubtful or equivocal testimony.

The 5th bill of exception is to the admission of John R. M'Ilvain as a witness on behalf of the plaintiff below.    He was united with Joseph W. Smith in the contract made with the plaintiffs in error for constructing the tunnel and doing all the other work requisite to be done on the 82d section of the Philadelphia and Reading Rail-road, and had become jointly indebted with Joseph W. Smith

[Reading Rail-road Co. v. Johnson.]

to Peter Smith for powder sold to them while engaged in constructing the tunnel; and the debt thus contracted by John R. M'Ilvain and Joseph W. Smith with Peter Smith for the powder, is the same that Peter Smith is trying to recover in this action, for the use of Jacob Johnson, as it is alleged. M'Ilvain was objected to as incompetent on the ground of interest. That he had been interested as a joint debtor with Joseph W. Smith to Peter Smith, the plaintiff on record below in this action, for the price of the powder which is claimed to be recovered of the plaintiffs in error, instead of M'Ilvain & Smith, was not denied, but seemed to be admitted, and, therefore, unless removed, would render him incompetent. But, to remove it, a release, executed by Jacob Johnson, Jun., for whose use this suit is stated to be brought, was produced and shown to the court below, whereupon they admitted Mr M'Ilvain to testify. The release is quite formally drawn; but then all the actions, causes of action and claims of every description therein enumerated and released, appear to be such only as existed against Mr M'Ilvain alone. The claim sued for here is not specifically mentioned in the release; nor is the name of Joseph W. Smith, or the names of M'Ilvain & Smith, as partners or as a firm, mentioned therein. In short, there appears to be no reference to it whatever, so that if it had been intended not to release Mr M'Ilvain from the interest which he had on account of his joint liability with J. W. Smith to pay it, and for aught that appears to the contrary must still have, more care or caution could not have been used for that purpose.

The 6th bill of exception was to the admission of verbal evidence to prove the contents of a final estimate made in writing by the engineer of the plaintiffs in error, whose business it was to make it, of the value of the work done by M'Ilvain & Smith in constructing the 82d section of the road, which M'Ilvain testified was shown to him by Robinson, as the engineer and agent of the plaintiffs in error, without having given any previous notice to the plaintiffs in error to produce it on the trial of the cause. It must be observed that Mr Robinson, who was examined as a witness for the plaintiffs in error, testified that he never made such final estimate as that which was offered to be established by the evidence objected to; so that, if such previous notice had been given, it would not have enabled the plaintiffs in error to have produced it in order that it might speak for itself, seeing they denied and gave evidence showing that it never existed. I am therefore rather inclined to think that no error was committed by receiving the evidence for the purpose offered, as it would seem to be the only evidence that the plaintiff below could have obtained of the fact, even if he had given the notice required by the plaintiffs in error.

A number of exceptions have been taken and assigned for error to the charge delivered by the court to the jury, and to answers also given by the court to points submitted by the counsel below

for the plaintiffs in error. It is, however, unnecessary to notice them in detail, as they relate principally, if not entirely, to the view which the court took of the evidence given on the part of the plaintiff below in their instruction to the jury, and in telling them, in short, if they believed it, they would be justified in finding a verdict for the plaintiff; and we are of opinion that neither his declaration filed in the case, nor the evidence given by him on the trial of it, presents such a cause of action as entitles him to a recovery of his claim. The cause of action set forth in the declaration is in substance, and nothing more than, that the plaintiffs in error promised Peter Smith, the defendant in error, to pay him whatever balance was owing by them to M'Ilvain & Smith for their work done on the rail-road, towards paying a debt of $4000 which he said was owing to him by M'Ilvain & Smith, if M'Ilvain & Smith would consent to it, which they afterwards did. It is very clear, if such a promise as this were made, that no consideration whatever passed between the plaintiffs in error and the defendant in error for it. The plaintiffs in error did not receive, nor were they to receive anything for it; and it is equally clear that Peter Smith, the defendant in error, gave up or parted with no right which he possessed to induce such promise, or as a consideration for it, such as by forbearing to sue M'Ilvain & Smith for the debt owing by them to him, or by releasing them from it. The promise of the plaintiffs in error, if made at all as stated by the plaintiff in his declaration, was purely collateral, without the shadow of consideration, and therefore void.

And as to the evidence given by the plaintiff in support of his claim, it appears to be as deficient in showing any consideration that would entitle him to recover it in this action, upon any declaration that he could draw, as the one filed. In truth, the evidence is totally deficient in showing that any promise was ever made by the plaintiffs in error to pay the debt, or any part thereof, owing by M'Ilvain & Smith to Peter Smith, the plaintiff below. Anything that ever passed on the subject was with Wirt Robinson, the engineer of the plaintiffs in error, who has not been shown to have had any authority from them to make such promise on their behalf as is alleged to have been made by them. But, without authority from them to make such promise, it is clear that, if he ever did make it, it could not be considered their promise, nor binding upon them.

Judgment reversed.